**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**WINFRED BAILEY,**
  **Plaintiff,**

v.              No: 5:04cv423/SPM/MD

**JO ANNE B. BARNHART,
Commissioner of Social Security,**
  **Defendant.**

_____

**REPORT AND RECOMMENDATION**

  This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Bailey's application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

  Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and SSI which were denied initially and on reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ) and a hearing was held on June 29, 2004.  On August 30, 2004, the ALJ rendered an unfavorable decision (Tr. 14-21) and the Appeals Council declined review (Tr. 5-7), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe conditions consisting of a history of coronary artery disease, degenerative disc disease, chronic pain, fatigue, and carpal tunnel syndrome, but that he did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4; that he did not have a severe mental impairment; that his testimony concerning the severity of his impairments and resulting functional limitations was not persuasive; that he had the residual functional capacity to perform a wide range of light work; that he was unable to perform his past relevant work; that he was a younger individual with a limited education; that given his limitations with regard to light work and the testimony of a vocational expert, there are a significant number of jobs in the national economy that the plaintiff could perform, including such jobs as grocery bagger and janitorial worker; and that he was not under a disability as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence.  *Falge, supra*.  The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is

premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairment?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

From June 14, 1999 until March 9, 2001, plaintiff was treated for elbow pain by Michael Rohan, M.D.  Plaintiff essentially recovered from that episode because elbow pain was not mentioned except possibly in passing after March 2001 (Tr. 142-157).

In December 2001, plaintiff was seen by Michael Reed M.D. for an examination of a job-related injury to his back suffered on November 16, 2001.  Plaintiff complained of pain in his low spine.  X-rays showed minimal degenerative changes at L5-S1 and Dr. Reed's impression was lumbar disc disease with lumbar strain but without evidence of radiculopathy (Tr. 147-149).  Plaintiff returned on January 8, 2002 with the same complaints, and Dr. Reed ordered an MRI (Tr. 146).  It showed Grade I spondylolisthesis at L5-S1 which Dr. Reed reviewed with plaintiff on January 17, 2002.  Dr. Reed's notes of that visit indicated that he could not account for the plaintiff's current symptoms based on the MRI scan and his physical findings and returned him to work at medium duty with no lifting greater than 40 pounds, no

prolonged sitting or standing (more than 30 minutes at a time), and no prolonged overhead activities with minimal bending and stooping (Tr. 145).

Plaintiff began suffering from chest pains in August 2002 was admitted to the hospital from the emergency room on August 16, 2002. He underwent bypass surgery with two grafts on August 20. The surgeon, Dr. Finney, saw the plaintiff in follow-up on September 24, 2002 and noted that plaintiff was without complaints. Physical exam was unremarkable although plaintiff still had fatigue and weakness. Dr. Finney noted "I am not sure that he will really be able to work again." (Tr. 199). On October 10, 2002 Dr. Finney wrote a letter To Whom It May Concern which stated "it is my opinion that it is very doubtful he will be able to return to any meaningful type of work situation." (Tr. 174). Plaintiff was also under the care of a family practitioner, Albert Mapp, M.D., from September 2002 through the date of the hearing in this case. Dr. Mapp treated plaintiff variously for chest pain, cervical disc disease, gallstones and other general medical conditions (Tr. 186-190, 220-237).

Because he continued to complain of chest pain, plaintiff's cardiologist, Dr. Trantham performed a heart catherization on March 20, 2004. Dr. Trantham noted that one of the plaintiff's bypass grafts remained patent while the other was occluded (Tr. 213-214). A follow up stress EKG was unremarkable except for some left ventricular segmental dysfunction which showed an estimated ejection fraction of 45% (Tr. 218).

Plaintiff was also examined in consultation by Kris Lewandowski, M.D., an internist, on October 25, 2002. Dr. Lewandowski noted that plaintiff's chief complaint was back pain, which he described as continuous in his lower back, radiating into the right leg. On examination plaintiff's back was entirely normal with no tenderness or spasm, he had full range of motion in his arms and legs, there was no neurological deficit, he appeared to be comfortable, and in Dr. Lewandowski's opinion plaintiff's functional ability was not impaired (Tr. 175-176).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to properly discount the opinion of the treating physicians, in failing to find that plaintiff met one of the listed impairments, and in failing to seek an appropriate opinion on that issue, and that plaintiff was disabled from his onset date as a matter of law.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. <u>Opinions of treating physicians.</u>

Plaintiff contends that the ALJ erred in not giving appropriate weight to the opinions of two treating physicians.  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Stewart, supra; Lewis, supra.; Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  Generally, a treating physician's medical opinion is entitled to greater weight than the opinion of a consulting physician.  *Wilson v. Heckler*, 734 F.2d 513, 516 (11th Cir. 1984).  In *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986), the Eleventh Circuit ruled:

> The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error. . . .  Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.

786 F.2d at 1053.  The opinion of a nonexamining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician.  *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).  However, a brief and conclusory statement that is not

supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). *Compare, Wilson v. Heckler, supra*.

   a. <u>Dr. Finney.</u>

Dr. Finney's opinion was far from definitive. On September 24, 2002, one month after plaintiff's bypass surgery, Dr. Finney's office note read in its entirety as follows:

> Mr. Bailey comes in today for his final surgical follow-up. He is one month status post coronary artery bypass grafting X 2. *He is without complaints. His physical exam is really unremarkable.* He still had fatigue and weakness. I am sure that this goes along with his decreased LV function and extremely small and poor targets. The patient states that he has managed to stay off cigarettes, which is a good thing. *I am not sure that he will really be able to work again.*

(Tr. 199) (emphasis added). This is barely an opinion, much less an opinion that the plaintiff has such physical limitations as to make him disabled as defined in the Social Security Act. Moreover, Dr. Finney's second stated opinion, contained in a letter "To Whom It May Concern," was that "it is very doubtful he will be able to return to any meaningful work situation." (Tr. 174). This letter was written less than three weeks after the above-quoted clinic note, and with no intervening visit. Plaintiff faults the ALJ for not giving these two opinions great weight. The ALJ appropriately rejected these opinions. The opinion by a treating physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims. The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner. For instance, Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the

Commissioner will automatically reach the same conclusion.  See also Title 20 C.F.R. § 416.927(e).  Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner. Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3);  *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").  Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record.  SSR 96-5p.  In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do *any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters.  Moreover, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of the person's prior employment, local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters.  These things are not properly considered by the Commissioner in determining disability. Title 20 C.F.R. §§ 404.1566, 416.966.  For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for

the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

Moreover, Dr. Finney's first stated opinion was tentative at best, and his second one, without an intervening office visit, was barely more definite. The ALJ pointed out that Dr. Finney's opinions were not supported by the clinical record when he stated those opinions at a time when plaintiff's physical examination, as described by Dr. Finney, was unremarkable. The ALJ did not err in rejecting Dr. Finney's opinion, and plaintiff is not entitled to reversal on this ground.

b.  **Dr. Reed.**

Dr. Reed is an orthopedic surgeon who treated plaintiff over a period of three months in late 2001 and early 2002. He was concerned with an apparent job-related injury. He read an MRI scan which was not particularly revealing, stated that he could not account for the plaintiff's symptoms based on his scan and physical findings, rated plaintiff at 0% impairment, and "returned the patient to work at a Medium Duty physical demand level, with no lifting greater than 40 lbs., no prolonged sitting or standing (more than 30 minutes at a time), and no prolonged overhead activities. He is to do minimal bending and stooping." (Tr. 145). This is far from a ringing endorsement for disability. Plaintiff argues not that Dr. Reed found plaintiff to be disabled, but that the ALJ ignored the restrictions that Dr. Reed placed on him - that he needed to avoid prolonged sitting or standing and do only minimal bending or stooping. The ALJ found that plaintiff could perform only light, not medium duty. He noted that the state agency physicians had opined that plaintiff could perform the full range of light work, but the ALJ restricted plaintiff further, allowing no repetitive bending or stooping and only occasional overhead reaching or lifting. Plaintiff splits hair when he argues that "minimal bending and stooping" is materially different than "no repetitive bending and stooping." Moreover, the state agency physicians placed *no* restrictions on plaintiff's ability to do light work, and the ALJ's decision would have been supported by substantial record evidence had

he accepted those opinions. Plaintiff argues in essence that the ALJ was required to accept all of Dr. Reed's opinion if he accepted any of it, but that is incorrect. The ALJ arrives at a residual functional capacity based on all the evidence. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416945(a), and 416.946(c). The ALJ did not err in not accepting all of Dr. Reed's opinion, and plaintiff is not entitled to reversal on this ground.

2. Listing 4.04.

Plaintiff next contends that the ALJ erred in not finding him disabled under listing 4.04. The regulations promulgated by the Commissioner at Appendix 1, Subpart P set out specific physical and mental conditions that are presumptively disabling. If a claimant meets the requirements of one of the listings, no further proof of disability is required. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff claims that listing 4.04 on ischemic heart disease applies to his physical condition. He bases his argument on the heart catherization finding that one of his bypass grafts was occluded. However, the regulations require that a claimant meet *all* of the requirements of the listing.[1] There is no evidence that

---

[1]

4.04 Ischemic heart disease, with chest discomfort associated with myocardial ischemia, as described in 4.00E3, while on a regimen of prescribed treatment (see 4.00A if there is no regimen of prescribed treatment). With one of the following:

A. Sign- or symptom-limited exercise test demonstrating at least one of the following manifestations at a workload equivalent to 5 METs or less:

1. Horizontal or downsloping depression, in the absence of digitalis glycoside therapy and/or hypokalemia, of the ST segment of at least -0.10 millivolts (-1.0 mm) in at least 3 consecutive complexes that are on a level baseline in any lead (other than aVR) and that have a typical ischemic time course of development and resolution (progression of horizontal or downsloping ST depression with exercise, and persistence of depression of at least -0.10 millivolts for at least 1 minute of recovery); or

2. An upsloping ST junction depression, in the absence of digitalis glycoside therapy and/or hypokalemia, in any lead (except aVR) of at least -0.2 millivolts or more for at least 0.08 seconds after the J junction and persisting for at least 1 minute of recovery; or

3. At least 0.1 millivolt (1 mm) ST elevation above resting baseline during both exercise and 3 or more minutes of recovery in ECG leads with low R and T waves in the leads demonstrating the ST segment displacement; or

4. Failure to increase systolic pressure by 10 mmHg, or decrease in systolic pressure below usual clinical resting level (see 4.00C2b); or

*Case No: 5:04cv423/SPM/MD*

**plaintiff met the A criteria of the listing (requiring specific findings on an exercise test, none of which were present on plaintiff's stress EKG) (Tr. 218), nor the B criteria (requiring left ventricular ejection fraction of 30 percent or less (plaintiff's stress EKG result was 45%)). Plaintiff meets part of the C criteria (obstruction of a bypass graft vessel) but fails the first requirement - a physician's conclusion that "performance of exercise testing would present a significant risk to the individual." This is clearly not present since plaintiff performed the stress EKG test. Plaintiff did not meet *all* the requirements of listing 4.04, and therefore was not entitled to a finding of disabled for that listing.**

---

5. Documented reversible radionuclide "perfusion" (thallium$^{201}$) defect at an exercise level equivalent to 5 METs or less;

Or

B.   Impaired myocardial function, documented by evidence (as outlined under 4.00C3 or 4.00C4b) of hypokinetic, akinetic, or dyskinetic myocardial free wall or septal wall motion with left ventricular ejection fraction of 30 percent or less, and an evaluating program physician, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise testing would present a significant risk to the individual, and resulting in marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest;

Or

C.   Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation), and an evaluating program physician, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise testing would present a significant risk to the individual, with both 1 and 2:

1. Angiographic evidence revealing:

a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or

b. 70 percent or more narrowing of another nonbypassed coronary artery; or

c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or

d. 50 percent or more narrowing of at least 2 nonbypassed coronary arteries; or

e. Total obstruction of a bypass graft vessel; and

2. Resulting in marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest.

*Case No: 5:04cv423/SPM/MD*

Plaintiff argues further, however, that the ALJ should have sought a medical opinion concerning the effect of the occluded graft vessel. That is illogical. The regulations set out the requirements for the C criteria of listing 4.04. By adopting these listings, the Commissioner has already determined the parameters of what must be shown where there is an occluded graft vessel. The ALJ must have only sufficient evidence to decide the case. The seminal cases in this circuit on the ALJ's duty to develop the record are *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir. Unit B October. 15, 1981) and *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984). Both held that it is not necessary for the ALJ to order a consultative examination unless the record established that such an examination was necessary to enable the ALJ to make a decision. Where he has sufficient information to decide the case he can do so. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to a decision, no showing of prejudice is made). The ALJ did not err in finding that plaintiff did not meet the requirements of listing 4.04 or in not seeking a medical opinion. Plaintiff is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 19th day of August, 2005.

/s/ *Miles Davis*
 **MILES DAVIS
 UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 5:04cv423/SPM/MD*